## CHOCTAW COTTON OIL CO. v. POPE.

No. 6022.    Opinion Filed December 8, 1914.

Rehearing Denied May 11, 1915.

(148 Pac. 170.)

1. **MASTER AND SERVANT—"Vice Principal."** Where an employee is in charge of the master's business or any department thereof whose duties are exclusively supervision, direction, and control of the work over a subordinate employee engaged therein whose duty it is to obey him. he is a vice principal, notwithstanding he may be subject to general orders or superintending control of a general manager.

2. **SAME—Injury to Servant—Vice Principal — Fellow Servant.** Relative to all those absolute or nondelegable duties which the law casts upon the master for the protection of his servants, the servant, of whatever rank, to whom the master delegates the performance of such duties is his vice principal, and not a fellow servant with the servant who was injured through his negligence in performance of such duties.

3. **SAME.** Defendant company placed B in charge of its ginning department, with discretionary power to employ and discharge servants, to direct and control them in the operation of this part of the business, subject to a superintending control of the general manager. B. ordered plaintiff. whom he had employed and who was under his control, under penalty of discharging him for failure to obey, to clean certain gin machinery while it was in operation. Plaintiff obeyed said order and as a result thereof was injured. **Held,** B. was a vice principal in giving such order, and his act therein was the act of the master.

4. **SAME—Dangerous Machinery—Nondelegable Duty.** The making and promulgating rules and giving orders governing the operation of complicated and dangerous machinery is a nondelegable duty of the master, from which he cannot escape liability for an injury received by negligence of a servant to whom the performance of such duty had been intrusted.

5. **SAME—Contributory Negligence—Assumption of Risk—Question for Jury.** Plaintiff and two of his witnesses testified, in substance, that B. instructed plaintiff not to stop the gin when cleaning the ribs, but to clean the same while in operation; that B. showed him how to clean same while the gin was in operation, and assured him it could be done with but little danger by use of more than ordinary care. B. testified that he had often cleaned the ribs while the gin was running. **Held,** the question as to whether or not plaintiff was guilty of contributory negligence and assumed the risk attendant upon the performance of

such duty in obeying said order were, under the Constitution, issues to be determined by the jury.

6.   **APPEAL AND ERROR**—Evidence—Harmless Error—Expert Testimony. The court, over objection of defendant, permitted plaintiff and two of his witnesses to testify that the order given to plaintiff by B. pertaining to the cleaning of the gin machinery was a continuing one, and required a continued observance, and applied to the conduct of plaintiff in the future. **Held** error, for the reason that it was not a subject for expert testimony, and was an invasion of the province of the jury. **Held**, further, that the language in which the order was given was not subject to any construction other than that placed thereon by the witnesses, and therefore was not prejudicial error.

7.   **SAME**—Admission of Evidence. The court permitted plaintiff to testify that he had a wife and three children. The verdict was less than the average for an injury similar to the one received by plaintiff. No complaint is made that the verdict is excessive. **Held**, if error, it was not prejudicial.

8.   **INSTRUCTIONS.** Instructons of the court examined, and found to fairly state the law applicable to the issues, and the court did not commit prejudicial error in the instructions given; nor in its action in refusing to give special instructions requested.

(Syllabus by the Court.)

*Error from Superior Court, Pottawatomie County;*

George C. Abernathy, Judge.

Action by Leslie S. Pope against the Choctaw Cotton Oil Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Edward Howell* and *Ledbetter, Stuart & Bell,* for plaintiff in error.

*W. T. Williams,* for defendant in error.

RIDDLE, J. The parties will be designated herein as they appeared on the docket in the trial court. Plaintiff sued defendant in damages for the loss of his hand and injury to his hand and arm. In substance, the ground of recovery relied upon was that defendant owned and operated a cotton seed oil mill and cotton gin in Shawnee, Okla.; that each gin stand is equipped with 70 circular saws; that said saws are set on a line shaft about five-eighths of an inch apart; that in the operation of the gin

stands they become clogged by lint and trash accumulating between the rib plate, rendering it necessary to clean same, and it was part of plaintiff's duty to clean same; that defendant breached its duty to plaintiff in failing to provide reasonably safe instrumentalities with which to perform his work; that it was the duty of defendant to promulgate and enforce reasonable rules and regulations for conducting the operation of its said oil mill and machinery, which defendant failed to do; that, on the contrary, defendant negligently and carelessly instructed plaintiff, in disregard of its duty toward him, not to stop the machinery of his gin stand while cleaning the ribs, and directed plaintiff to raise the breast and clean the ribs without stopping said machinery, which said order compelled plaintiff to clean said stand while the saws were in motion, or to quit his employment; that on December 7, 1911, he received a hurry order from defendant at about the hour of 5 o'clock p. m. to clean his gin stand; that at the time he received said order the four gin stands were running, and, in obedience to said order of defendant not to stop said machinery to clean the ribs, plaintiff raised the breast on the gin stand, and without negligence on his part proceeded to clean the ribs of said stand, as he had done many times before, and had, without accident, finished cleaning all but one or two ribs of said stand; that the back lash or trench of these ribs, for some reason, was set more firmly, and while pulling and removing said lint and trash it suddenly gave way, by reason of which plaintiff's right hand came in contact with said saws in said gin stand, and his said arm, wrist, and hand were badly and permanently lacerated, cut, and torn, and the two middle fingers of his right hand were cut so it became necessary to amputate and remove them; that by reason of such injury, plaintiff suffered great pain in body and mind, and lost the use of his right arm and hand, being disabled from doing manual labor, and deprived of his

ability to provide a living for himself and family. He prayed judgment for the sum of $15,000.

Defendant filed its answer, containing: (1) A general denial; (2) affirmatively alleging that plaintiff was guilty of contributory negligence, that the hurry order was from a fellow servant of plaintiff, and was not from a vice principal of defendant, and was not given by any one having authority from defendant, and that said hurry order was the approximate cause of plaintiff's injury, if any; (3) that plaintiff knew, or ought to have known, that it was dangerous to clean said stand when the machinery was running, and that plaintiff assumed the risk resulting therefrom; (4) that said injury was caused by want of ordinary care and through plaintiff's own negligence in attempting to clean said gin stand under such circumstances.

To this answer a reply was filed. Upon a trial of the issues as thus made, judgment was rendered in favor of plaintiff for the sum of $1,500. Motion for new trial was filed and overruled, and defendant prosecutes error to this court.

Plaintiff in error in its petition in error urges 46 assignments of error. The assignments necessary to be considered relate to the following errors: (1) Error in permitting plaintiff to testify he had a wife and three children; (2) error of the court in the admission of certain testimony relative to the alleged order; (3) error of the court in refusing to give certain special requested instructions; (4) error of the court in its charge to the jury; (5) error in overruling the demurrer of defendant to the evidence of plaintiff; (6) error in overruling motion for new trial.

On the trial of the cause the court permitted plaintiff to prove that one Brown, under whom plaintiff worked,

instructed plaintiff to clean the gin stand without stopping the gin; defendant contending that said Brown was a fellow servant, and not a vice principal. The principal propositions presented for consideration under the various assignments are: (1) Was Brown, at the time he gave the order in question, as indicated above, a vice principal? (2) If Brown was not a vice principal, was he acting within the scope of his authority in giving said order, so as to be binding upon defendant? (3) Was defendant guilty of negligence in failing to make, promulgate, and enforce rules and regulations governing its employes in the operation of said machinery? (4) Was defendant, in giving the order through Brown, its employee, guilty of negligence toward plaintiff?

Plaintiff makes no contention that the machinery was not modern or suitable for the purposes, or that the building and place where he performed his work was defective; hence, it will be unnecessary to notice further the authorities cited and the argument on these matters.

It is the contention of defendant that Brown was a fellow servant, and that, if the order was given as claimed, it was unauthorized, and the giving of such order was not binding on defendant. It appears from the record that defendant owns and operates a large cotton seed oil mill, and in connection with said mill owns and operates the eight gin stands referred to; that plaintiff was employed as ginner; and that he had some three or four years' experience in ginning. It is shown from the record that Brown had charge of the gin, and had authority to employ and discharge men at his pleasure, and to give such orders in the management and operation of said gin as he deemed proper. Plaintiff testified in reference to the order as follows:

"The order I received from Mr. Brown was not to stop the machinery to clean the ribs of the gin. * * * He said: 'Pope, you must not stop these gins to clean the

ribs, or I will get a man that will not.' Q. I will ask you to state whether or not Mr. Brown, at the time he gave you this order, illustrated and showed you how to clean these ribs, and told you it was not dangerous. A. Yes, sir; he did. He showed me how it could be did. He said by being careful there was no danger of a man getting hurt when he come to clean the ribs. Q. I will ask you to state whether or not he told you it could be done with safety. A. Yes, sir. * * * Q. - the only instruction you received was not to stop the machinery? A. Yes, sir."

Witness McBroom testified as follows:

"Q. I will ask you if at any time during the time you worked there you were present when Mr. Brown gave any instruction or order to Mr. Pope—what he should do when he cleaned the ribs. A. Yes, sir. Q. Mr. McBroom, tell the jury what Mr. Brown said to Mr. Pope. A. He told Mr. Pope that those gin stands could run, and could be cleaned without having to stop, and said that they must be, or he said he would have to get a man that could do it."

Witness Renegar testified as follows:

"Q. What orders, if any, did you hear Mr. Brown at that time give to these parties? A. I heard Mr. Brown tell the boys: 'If you cannot clean the gin stands and them running, I will get a man that can do it.' Q. Was that an order to be obeyed under all conditions, or for that one instance? A. All conditions."

It is conceded that Mr. A. G. Eakins was the general manager of defendant company. Relative to Mr. Brown's duty and authority, he testified as follows:

"Q. Tell the court and jury the various duties Brown had to perform and the supervision you exercised over him and the number of times you were to the gin, approximately, etc., during the season of 1911. A. Mr. Brown, as I stated, was put in charge of the Choctaw gin on Beard street as manager of that plant, with authority to employ his help and to discharge them at his pleasure, or as he thought advisable, and he was in charge of the operation of that plant, and he was looked to for the proper operation of that plant. Q. What kind of supervision did you

hold over him? A. I exercised a general supervision of the business. I was over there generally, when in town, every day; would spend some of the day there. Possibly some days I did not get over there when I was busy with other matters that come up, and times that matters came up that Mr. Brown did not feel he could handle without advice he called me. Q. How often did he advise with you? A. Almost daily."

It will be seen that Brown was placed in charge of the ginning department of this plant, with discretionary power to employ and discharge men under him at his pleasure; or, in other words, it may fairly be inferred from the record that he had complete control of this department, subject to the general superintending advisory control of the general manager; had authority to direct the operating of said gin, the placing of employees, and to do and perform such other matters in connection with the operation of same as his judgment might dictate.

Mr. Labatt, in his work on Master and Servant (section 1447), in giving a summary of the adjudicated cases on this subject, states the rule as follows:

"Where the master appoints an agent with a superintending control over the work, and with power to employ and discharge hands and direct and control their movements in and about the work, the agent stands in the place of the master."

And again, in the same paragraph:

"Where the master gives to a person power to superintend, control, and direct the men engaged in the performance of work, such person is, as to the men underneath him, a vice principal, and it can make no difference whether he is called a superintendent, conductor, boss, or foreman. For his negligent acts and omissions in performing the duties of the master the master is liable."

Mr. Thompson, in his Commentaries on the Law of Negligence (section 4950), states the rule as follows:

"Again, it is said that the test as to whether a person occupies the relation of vice principal or fellow servant

is not whether he has charge of an important department of the master's service, but whether his duties are exclusively supervision, direction, and control of the work over subordinate employes engaged therein, whose duty it is to obey him, and whether he has been vested with such power by the master."

While the cases by this court cited and relied on by defendant involved causes of action arising prior to statehood, yet the rule adhered to in those cases is not in conflict with the rule we are announcing, as those cases can be distinguished from the present case. Whether or not the rule of the federal court followed in those cases should be modified in cases arising since statehood is not now necessary to determine.

The exemption of the master from liability in this case cannot be claimed on the ground that the employee, Brown, was only a foreman. While it is true he was a foreman—and so is every other superintendent or manager of any department or business—he, in this instance, was more than a foreman. He not only had authority to direct the employees under him in their work, but also had power to employ and discharge them at pleasure, having full control over this particular department, subject, as we have seen, to the general superintending control of the manager. In other words, the general manager had such general superintending control over all the departments, and the heads of the different departments would look to him for general instructions, advice, and suggestions to the same extent as the general manager would look to the board of directors.

We think this holding comes fairly within the rule laid down by the Supreme Court of the United States in the case of *Chicago & Milwaukee Railroad v. Ross*, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787. Mr. Justice Field in that case uses the following language:

"There is, in our judgment, a clear distinction to be made in their relation to their common principal between

servants of a corporation exercising no supervision over others engaged with them in the same employment and agents of the corporation clothed with the control and management of a distinct department, in which their duty is entirely that of direction and superintendence."

The court quotes with approval from Mr. Wharton in his work on the Law of Negligence, as follows:

" 'It has sometimes been said that a corporation is obliged to act always by servants, and that it is unjust to impute to it personal negligence in cases where it is imposisble for it to be negligent personally. But, if this be true, it would relieve corporations from all liability to servants. The true view is that, as corporations can act only through superintending officers, the negligence of those officers, with respect to other servants, is the negligence of the corporation.' "

And, further, the court said:

"When these directors appoint some person other than themselves to superintend and perform all these executive duties for them, then such appointee, equally with themselves, represents the corporation as master in all those respects. And though, in the performance of these executive duties, he may be, and is, a servant of the corporation, he is not in those respects a coservant, a co-laborer, a coemployee, in the common acceptation of those terms, any more than is a director who exercises the same authority."

The court quotes from the case of *Railway Co. v. Keary*, 3 Ohio St. 201, speaking of the conductor in charge of a train, as follows:

"They commission him to exercise that dominion over the operations of the train which essentially pertains to the prerogatives of the owner; and in its exercise he stands in the place of the owner, and is in the discharge of a duty which the owner, as a man and a party to the contract of service, owes to those placed under him, and whose lives may depend on his fidelity. His will alone controls everything, and it is the will of the owner that his intelligence alone should be trusted for this purpose. This service is not common to him and the hands placed under

him. They have nothing to do with it. His duties and their duties are entirely separate and distinct, although both necessary to produce the result. It is his to command, and theirs to obey and execute. No service is common that does not admit a common participation; and no servants are fellow servants when one is placed in control over the other."

So the same may be said of the employee, Brown. He performed no labor in common with plaintiff; it was the will of the company that he superintend this department, that he should direct, and that the employees under his charge should obey. He was given the authority to discharge, in the event said employees under him failed to obey. Subject to a general superintending control of the general manager, he had complete control over this department, and was placed in charge to represent the master, practically to the same extent as if he were the owner.

There is another reason why, in our judgment, the master is liable in this case, and that is: It was the duty of the master to promulgate and enforce such reasonable rules and regulations in regard to the operation of this plant as would tend to reasonably protect the employees. The testimony of the general manager shows that about two years before plaintiff's injury he had made and promulgated rules, but that at the time plaintiff was employed and injured they had no rules governing the operation of said machinery; but, instead of continuing the rules in force, it seems Brown was put in charge of the ginning department, with full authority to manage, control, and operate the same, and to give such instructions as his judgment might dictate. The promulgation and enforcement of general rules pertaining to the operation of said plant was a nondelegable duty; it was a positive duty the master owed its servants; and the witness Brown, in giving the order to plaintiff, stood in

the place of, and was acting for, the master personally, representing the company, and, if the giving of such order was within the scope of his authority, then the company is bound by his act, although he may not have been in complete control, and regardless of his rank. It is clear that the giving of such order was within the scope of the authority of Brown; or, in other words, the authority to give such order was implied from the general discretionary authority given him to direct the servants and to operate and control this department of said plant.

It is deducible from the foregoing that the correct rule is: (1) When an employee is placed in charge of a business or any department thereof whose duties are exclusively supervision, control, and direction of the work over subordinate employees engaged therein whose duty it is to obey him, the master thereby constitutes him a vice principal, notwithstanding he may be subject to general orders or superintending control of a general manager or other officer. (2) Relative to all those absolute or nondelegable duties which the law casts upon the master for the protection of his servants, the servant, of whatever grade, to whom the master delegates the performance of those duties, is his vice principal, and not a fellow servant with the servant who may be injured through his negligence in the performance of such duties. The comparative rank of the servant guilty of the negligent act causing the injury and of the servant receiving the injury is not the controlling test by which to determine whether or not the master is liable, but it is the character of the negligent act or omission.

The foregoing rules are supported by the weight of authority, and are in harmony with reason and justice. Otherwise, an employee being given control of servants, with discretionary power to command obedience to his orders, if any such servant should be injured as a result

of obeying such order, the master could escape liability on account of having trusted such employee with the direction and control of the injured servant. This rule, if adhered to, would be equivalent to holding that the more complete control of his business the master intrusted to servants and the less personal attention he gave to same, the less his liability would be; and to carry such rule to its logical conclusion would, in effect, render the master free from all liability for injuries to his servants caused by the negligence of those in charge of his business.

It is next contended that the cleaning of said gin while the same was in operation was so obviously dangerous that, as a matter of law, it was contributory negligence for plaintiff to obey said order, and that, as a matter of law, plaintiff assumed the risk attending the obedience to said order. This contention, however, is not sound. It is shown from the testimony of Brown that he had cleaned these gins while they were running. While it was dangerous, yet it could be done with but little danger, provided more than ordinary caution was used. Plaintiff testified to the same effect. If the testimony of plaintiff and his witnesses be true, he was compelled to obey this order, or suffer being discharged. If obeying the order subjected him to such danger that a reasonably prudent man under similar circumstances would have refused so to subject himself, then plaintiff was guilty of contributory negligence in obeying. But, under the Constitution, both of these issues were questions to be determined by the jury. The jury found them against defendant; and we are not prepared to say that they were not correctly determined, and certainly there is evidence to support the finding of the jury.

Mr. Labatt, on Master and Servant, section 1363, states the rule as follows:

"Although the circumstances, when abstracted from the fact of the giving of the order, may be such as to justify a court in holding that the servant appreciated the danger to which his injury was due, and was negligent in subjecting himself to that danger, such a conclusion is, in a large number of instances, not warrantable, if the testimony goes to show that the immediate occasion of his being subjected to that danger was his compliance with the order. The effect of this doctrine is that, where the servant, in obedience to an order, performs a duty which, though dangerous, is not so dangerous as to threaten immediate injury, or where it is reasonably probable that the work may be safely done by using more than ordinary caution or skill, he may recover, if injured. * * * The practical result of such a doctrine, when stated in terms of the servant's knowledge, is that the servant may maintain an action, unless he not only knows what is the risk to be encountered, but also that it will probably be attended with injury which he cannot avoid by the exercise of care and caution."

Other courts state the rule to be that an employee is not guilty of contributory negligence, as a matter of law, unless a reasonably prudent person, in his situation and with his knowledge of the danger, would not have obeyed the command, or unless the danger was so apparent or obvious, or clear, or manifest, or glaring, or imminent, that a person of that average prudence and intelligence might not have obeyed. Thus we see that, if the Constitution did not preclude the court from passing on the question in the first instance as to whether or not plaintiff was guilty of contributory negligence in obeying the order and assumed the risk incident thereto, it would not be warranted in holding, as a matter of law, under the circumstances here, that he would not be entitled to recover.

It is next contended that the court committed error in permitting plaintiff and the witnesses McBroom and Renegar to testify, in effect, that the order given to plain-

tiff by Brown was a continuing order, to be observed in the future, and not confined only to the duty being performed at the time. Defendant contends that this called for a conclusion of the witnesses, which does not come within the exception to the general rule, and that it was invasion of the province of the jury. We are of the opinion that this testimony does not come within the rule permitting opinion evidence, or, in other words, these parties were not testifying as experts upon any matter the subject of opinion testimony, and that the jury was in as good a position and as well qualified to construe the order and determine its quality and extent as were the witnesses. We do not agree with counsel that this ruling was prejudicial error. The very language of the order, as testified to by the witnesses, showed that it was to be obeyed in the future, and apparently there was no limitation as to the period of time it should cover. The order, as testified to by the three witnesses, clearly shows that it was to apply to the future conduct of plaintiff in cleaning the machinery, and was a continuing order; and it could not have been prejudicial error for the witnesses to be permitted to place that construction upon it. No other construction could have reasonably been given to the order than that stated by these witnesses; hence, no prejudicial error was committed in permitting the witnesses to so testify. 17 Cyc. 60, 61, and cases cited.

It is next contended that the court committed prejudicial error in permitting plaintiff to testify, over objection of defendant, that he had a wife and three children. We are unable to see how this could have had any influence with the jury in the consideration of this case, except as bearing upon the amount of recovery. The verdict in this case is for the sum of $1,500. From the character of the injury, described by plaintiff and other witnesses, and the suffering he endured, it is clear that

the verdict is not excessive; and, as compared to the holding of other courts in sustaining verdicts of juries for injuries similar to the one in question, a much larger verdict could reasonably have been sustained. In addition, no complaint is made that the verdict is excessive. So, if any error was committed in this respect, we are clearly of the opinion that it did not in any way prejudice the rights of the defendant. Should we reverse this case simply because an error of this kind was committed by the trial court, without regard to whether or not any injustice was done defendant, then in the trial of any case, where it accidentally or otherwise became known to the jury that one of the litigants had a family consisting of a wife and children, the court could be appealed to for the same reason to reverse the judgment.

It is next contended that the court committed error in refusing to give certain requested instructions of defendant, and in giving certain instructions to the jury. We have carefully examined the instructions given to the jury, and it is our opinion that the trial court covered the issues, and that the law given to the jury by the court fairly stated the law applicable to the issues involved, and that the court did not err in the instructions given to the jury; neither did it err in refusing to give to the jury said requested instructions.

Finding no prejudicial error, the judgment of the trial court is affirmed.

All the Justices concur, except KANE, C. J., not participating.